IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON

**JAMES L. HIGGINBOTHAM,**

    **Plaintiff,**

v.                                       Civil Action No. 3:17-cv-03886

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11) and Defendant's Brief in Support of Defendant's Decision (ECF No. 15). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act.

Background

Claimant, James L. Higginbotham, filed an application for DIB on August 27, 2014. Claimant alleged disability beginning February 1, 2014.[1] The claim was denied initially on January 2, 2015, and upon reconsideration on May 13, 2015. Claimant filed a request for a hearing on June 19, 2015. A hearing was held on December 16, 2016, in Charleston, West Virginia, before and Administrative Law Judge (ALJ). The ALJ denied Claimant's application on January 30, 2017. Subsequently, Claimant sought review of the ALJ's decision by the Appeals Council. The Appeals Council denied Claimant's request for review on July 3, 2017. Thereafter, Claimant

---

[1] Plaintiff's alleged onset date was later amended to June 20, 2014.

1

brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

## Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2017). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920. The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920. If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920. If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920. If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e), 416.920. By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920 (2017). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520(a) and 416.920(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520(c) and 416.920(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.*
>
>> (1)   Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>> (2)   We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See

3

> 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation:
>> Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520(d)(1) and 416.920(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520(d)(2) and 416.920(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental

disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(d)(3) and 416.920(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section. 20 C.F.R. §§ 404.1520(e)(2) and 416.920(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since June 20, 2014 (Tr. at 14). Claimant met the insured status requirements of the Social Security Act through December 31, 2019. (*Id.*) Under the second inquiry, the ALJ found that Claimant suffers from the following severe impairments: rectal cancer in remission; major depressive disorder; generalized anxiety disorder; and obsessive-compulsive disorder. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1. (*Id.*) The ALJ then found that Claimant has a residual functional capacity to perform sedentary work with the following limitations: Claimant is allowed to stand for five minutes after sitting for 30 minutes (would remain at work station and continue working during this time). He must avoid exposure to unprotected heights or moving mechanical parts. The claimant would not be expected to perform at a production rate. He is limited to simple work-related decisions and occasional interaction with co-workers and the public. In addition to normal

breaks, he would be off task 10 percent of an 8-hour workday and would be absent from work 1 day per month (Tr. at 16). The ALJ found that Claimant cannot perform past relevant work (Tr. at 21). The ALJ found that Claimant can perform jobs that exist in significant numbers in the national economy such as folder, polisher and food sorter (Tr. at 22). On this basis, Claimant's application was denied (Tr. at 22-23).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A further review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

## Claimant's Background

Claimant was born on July 12, 1979, and was 34 years old on the alleged disability onset date. Claimant has a General Equivalency Diploma (GED) (Tr. at 21).

Medical Record

The medical record has been adopted, as set out in the Claimant's Brief, Defendant's Brief and the ALJ's decision to the extent as incorporated below in the Discussion.

Claimant's Challenges to the Commissioner's Decision

Claimant argues that the ALJ's decision is not based on substantial evidence because the ALJ failed to properly evaluate Claimant's psychological symptoms in combination with his pain (ECF No. 11). Claimant asserts that the ALJ failed to give adequate weight to the opinion of Claimant's treating oncologist, Justin Cohen, M.D.. (*Id.*) Furthermore, Claimant avers that the ALJ failed to consider all of Claimant's limitations in the residual functional capacity (RFC) and relied on a hypothetical question to the vocational expert (VE) that did not take into account all of Claimant's limitations.

In response, Defendant avers that substantial evidence supports the ALJ's evaluation of Claimant's impairments at step three of the sequential evaluation process (ECF No. 15). Defendant asserts that substantial evidence supports the ALJ's evaluation of the "extreme checkbox opinion" by treating oncologist, Dr. Cohen. (*Id.*) Additionally, Defendant asserts that substantial evidence supports the ALJ's RFC finding and hypothetical question to the VE. (*Id.*)

Discussion

The Social Security Act states that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. §§ 423(d)(5)(A). The regulations also place the burden of proving disability on the claimant. 20 C.F.R. § 404.1512(a) ("you have to prove to us that you are… disabled"). In the present case, the ALJ identified and discussed whether the criteria was met for Listings 13.17 cancer in the small intestine, 13.18 cancer in the large

intestine and 12.00 mental disorders. The ALJ's step three finding stated that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" (Tr. at 14).

## RFC

Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record, including the effects of treatment and the limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication. *Id.* at *5. Social Security Ruling 96-8p explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin,* 826 F.3d 176, 179–80. (4th Cir. 2016). (citing *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015)). (quoting SSR 96-8p, 61 Fed. Reg. at 34, 478; see also *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

A RFC refers to the most a claimant can still do despite his limitations and is an assessment that is based upon all of the relevant evidence, including descriptions of limitations. 20 C.F.R. § 416.945(a). The final responsibility for determining a claimant's RFC is reserved to the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §§ 416. 927(d)(2), (3). For cases at the hearing level, the responsibility for

8

determining a claimant's RFC rests with the ALJ. 20 C.F.R. § 416.946. Therefore, an ALJ clearly has the duty and authority to make an independent assessment of a claimant's RFC based on the evidence of record.

In the present matter, the ALJ stated that she considered the severity of Claimant's physical and mental impairments singularly and in combination and found that Claimant's impairments do not meet or medically equal a Listing (Tr. at 15). Additionally, the ALJ considered the limitations and restrictions imposed by the combined effects of all of Claimant's medically determinable impairments. Consequently, although the impairments were not at a Listing severity, the ALJ's RFC assessment provided physical limitations in Claimant's ability to sit and stand, as well as, mental limitations of only performing simple work-related decisions and occasionally interacting with coworkers and the public. (*Id.*)

Furthermore, none of Claimant's treating or examining physicians opined that Claimant had any physical limitations due to his pain. The only opinions in the record to contain any physical limitations were issued by the state agency physicians who uniformly opined that Claimant could perform light work (Tr. at 68-69, 79-80). The ALJ assigned limited weight to the opinions of the state agency physicians because the "evidence received after the consultant's review of the record and the claimant's subjective pain complaints support [that] he is limited to sedentary exertion" with additional restrictions (Tr. at 21). Thus, the ALJ considered Claimant's subjective pain complaints in his RFC assessment when he lowered the exertional level of work he could perform from the light level as proposed by the state agency physicians.

Accordingly, the ALJ correctly evaluated the entirety of the record evidence, including the treatment records, medical opinions, and Claimant's self-reports, and appropriately found that Claimant retained the RFC to perform a sedentary range of exertional work with numerous

additional limitations to account for his physical and mental health symptoms. Additionally, the ALJ's hypothetical question to the vocational expert (VE) at the hearing included the limitations[2] as determined by the ALJ.

### Weight Afforded Medical Opinions

Social Security Ruling 96-6p provides that findings of fact made by state agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the ALJ and Appeals Council levels of administrative review. ALJs and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.

As explained by SSR 96-6p, the regulations provide "progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." For example, SSR 96-6p states that opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

---

[2] At the hearing, the ALJ asked the VE to consider the following:

> For the next hypothetical, assume an individual who can perform sedentary work, but who must be allowed to stand for 5 minutes after sitting for 30 minutes. The individual can have no exposure to unprotected heights, moving mechanical parts or—or moving mechanical parts. The individual would not be expected to perform at a production rate and would be limited to simple, work-related decisions, would have occasional interaction with coworkers and the public. In addition to normal breaks, the individual would be off task 10% of the time during an eight-hour workday and be expected to be absent from work one day per month (Tr. at 56).

Thus, SSR 96-6p concludes that the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as (1) the supportability of the opinion in light of the evidence in the record; (2) consistency with the record, including other medical opinions; (3) and any explanation for the opinion. *Id*.

Social Security Ruling 96-7p confirms that ALJs and the Appeals Council are required to consider findings of fact by state agency medical and psychological consultants and other program physicians and psychologists about the existence and severity of an individual's impairment(s), including the existence and severity of any symptoms. *See* 65 Fed. Reg. 11,866 (Mar. 7, 2000). While ALJs and the Appeals Council are not bound by any state agency findings, they may not ignore these opinions and must explain the weight they give to the opinions in their decisions. *Id.*

Further, "[u]nless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, non-treating sources, and other non-examining sources who do not work for us." (*Id.*) Examples of the kinds of factors that an administrative law judge must consider when evaluating the findings of State agency medical and psychological consultants are provided in paragraph (c)[3] of §§ 404.1527 and 416.927.

Claimant's treating oncologist, Justin Cohen, M.D., completed a checkbox mental RFC assessment form in August 2015. The form RFC assessment reflected that Claimant had multiple areas of mental functioning that are markedly affected. Dr. Cohen's RFC notes state that Claimant

---

[3] Unless a treating source's opinion is given controlling weight, all of the following factors will be considered in deciding the weight given to any medical opinion: (1) Examining relationship; (2) Treatment relationship; (3) Supportability; (4) Consistency; (5) Specialization; and (6) Other factors. 20 C.F.R. 416.927(c) and 404.1527.

11

"has depression related to chronic pain and his inability to sustain activity [for] more than 10 minutes. New onset of obsessive, compulsive behaviors" (Tr. at 389).

The ALJ gave "some weight" to the opinion of Dr. Cohen (Tr. at 20). The ALJ pointed out that Dr. Cohen is an oncologist and not a mental health provider (Tr. at 20-21). The records demonstrate that despite Dr. Cohen's suggested mental limitations, Dr. Cohen never performed any mental status evaluation or otherwise objectively assessed Claimant's mental condition (Tr. at 357, 358, 360, 362, 371, 373, 375, 377, 467, 470, 478, 481, 517, 529, 537). At most, Dr. Cohen recorded Claimant's complaints of depression and anxiety; it is well established, however, that the mere memorialization of a claimant's subjective complaints in the medical records does not transform these subjective complaints into objective medical findings. *See Craig v. Chater*, 76 F.3d 585, 590 n.2 (4th Cir. 1996).

More so, the ALJ discussed how Dr. Cohen's opinion was inconsistent with the mental health treatment records (Tr. at 20 at 21). *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). Indeed, mental status examinations throughout the relevant period were largely benign and revealed few symptoms other than a dysthymic mood.

The record of evidence that is inconsistent with Dr. Cohen's December 2015 RFC assessment includes mental status examinations by numerous medical professionals. A December 23, 2014, mental status examination (MSE) by Mareda L. Reynolds, M.A.. revealed that Claimant was alert and oriented; cooperative and in no distress; had appropriate social interaction; good eye contact; adequate verbal responses; normal speech rate and volume; a euthymic mood and a broad and appropriate affect; no hallucinations, delusions, obsessions, or compulsions; spontaneous, relevant, coherent, and clear speech; adequate insight and judgment;

no suicidal or homicidal ideation; normal immediate, recent, and remote memory; normal concentration and attention; and normal persistence and pace (Tr. at 347). Claimant reported that he took walks; cared for his dog; visited his girlfriend; washed laundry as needed; could complete his personal hygiene tasks; and visited with his girlfriend, parents, and friends. (*Id.*) Ms. Reynolds opined that Claimant had a good prognosis and noted the "mental status examination as unremarkable" (Tr. at 348).

On May 11, 2015, a mental status examination with Ernie Vecchio, M.A, revealed that Claimant was cooperative; had normal social skills; was oriented x 5; had a depressed and constricted affect; fluid stream of thought; focused thought content; no perceptual issues; fair insight; normal judgment; no suicidal or homicidal ideation; normal immediate and remote memory; mildly deficient recent memory; normal concentration; mildly deficient persistence and pace; and normal psychomotor behavior (Tr. at 352-353). Claimant reported that he went for walks; mowed his yard; spends time with his dog; visited his mother; and "text[ed his] buddies and girlfriend" (Tr. at 353-354).

On July 17, 2015, Claimant was evaluated by Jennifer Hancock, Psy.D., at the CAMC Cancer Center (Tr. at 522). Claimant reported that he worried about finances and was depressed because he could not do things he used to enjoy, such as hunting. He indicated that he has gone fishing but did not enjoy it (Tr. at 523). A mental status examination revealed that Claimant was cooperative; had a normal affect and an anxious mood; scattered concentration; congruent thought; normal speech; average intelligence and fund of knowledge; no suicidal or homicidal ideations; no delusions; and no hallucinations (Tr. at 527).

On September 15, 2015, a MSE by Karina Patel, M.D., revealed that Claimant made good eye contact; was cooperative, alert, and oriented x 3; had normal speech, rate, and rhythm; no

abnormal psychomotor activity; good attention and concentration; good memory; an "ok" mood; restricted affect and dysthymic mood; linear thought process; logical and goal oriented thoughts; intact fund of knowledge; no suicidal or homicidal ideation; negative perceptual disturbances; good insight and good judgment (Tr. at 430). Subsequent mental status examinations with Dr. Patel throughout 2015 and 2016 were mostly the same, and revealed that other than a dysthymic mood, Claimant made good eye contact; was cooperative and fully oriented to person, place, and time; and had good attention; normal speech; normal thought process and content; concrete cognition; and insight and judgment that ranged from poor to fair (Tr. at 437, 438-39, 591, 593, 595-96).

Additionally, the ALJ recognized that the mental health records reflect that Claimant did not always comply with treatment recommendations (Tr. at 20). Claimant admitted that he unilaterally stopped seeing his psychologist and stopped taking psychotropic medications (Tr. at 46-47). The records verify Claimant's admission and demonstrate that Claimant saw Dr. Hancock between July and November 2015, but then stopped seeing her (Tr. at 488, 522). On August 1, 2016, Claimant reached out to Dr. Hancock to report a possible addiction to pain medications. Claimant also reported that he was not interested in inpatient drug rehabilitation "even if they were able to work with him on pain . . . and does not believe he could cope with inpatient treatment" (Tr. at 612). Dr. Hancock "reiterated" that Claimant needed to go to his follow up appointments (Tr. at 613). Several days later, on August 4, 2016, Dr. Hancock again reminded Claimant that "no one could help him if he doesn't go to his appointments" (Tr. at 609). The following day Claimant reported that he did not go to a follow up appointment at the pain clinic and had not called to cancel (Tr. at 606, 609). In November 2016, Dr. Patel noted that Claimant had stopped using medications on his own, stopped seeing his psychologist and reported that he purchased medications off the street (Tr. at 20, 591).

Further, as the ALJ recognized, the record demonstrates that Claimant was able to perform all of his normal activities (Tr. at 20). For example, in December 2014, Claimant reported that he went for walks; drove a car; cared for his personal needs; spent time with his family and his girlfriend; prepared simple meals; mowed his lawn; washed laundry; did some sweeping and cleaning; went outside four to five times each day; went to church; shopped for groceries; and occasionally took his daughter to school and shopping (Tr. at 20, 47-49, 190-192, 210-213). Moreover, Claimant reported to his physicians that he continued to hunt and fish on occasion (Tr. at 326, 373, 438, 495, 523).

Moreover, "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Id*. (alterations in original) (internal quotation marks omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir.1996). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). (alteration in original) (internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (alteration in original) (internal quotation marks omitted).

Conclusion

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11), **GRANT** the Defendant's Brief in Support of the Defendant's Decision (ECF No. 15), **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: August 22, 2018

Dwane L. Tinsley
United States Magistrate Judge